241 N.J. Super. 536 (1990)
575 A.2d 532
PAULINE P. SALERNO, PLAINTIFF,
v.
FELIX G. SALERNO, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Hunterdon County.
February 6, 1990.
*537 Ruth Rabstein for plaintiff (Pellettieri, Rabstein & Altman, attorneys).
Robert J. Durst, II for defendant (Stark & Stark, attorneys).
*538 HERR, J.S.C.
Plaintiff-wife seeks payment by defendant-husband of her counsel fees in this dissolution action. This is a supplement to the letter opinion of this court dated January 26, 1990, wherein the court rendered a decision as to defendant's responsibility for counsel fees. The only remaining issue, which this court addresses sua sponte, is whether plaintiff's counsel is entitled to be paid any portion of a "premium" billing of $30,250, which is in addition to a fee of $47,206 charged by plaintiff's counsel based on the hourly rate set forth in the retainer agreement. The additional $30,250 "premium" has been billed to plaintiff for the same services for which an hourly rate was charged. Thus, the total charge for services by plaintiff's counsel is $77,456.
This court finds that the premium sought by plaintiff's counsel is not a permissible charge to either plaintiff or defendant under the facts of this case. While plaintiff's fee agreement states counsel's final bill will be based on not only the hourly rate, but "(b) the result accomplished; (c) the amount in controversy; and (d) our experience and ability ...," this court finds the retainer agreement as drafted does not comply with the New Jersey rules of court. (See entire agreement in appendix.) R. 1:21-7A requires retainer agreements in family actions and was adopted in 1982 "in response to increasing lawyer-client problems concerning fees in matrimonial litigation." Pressler, Current N.J. Court Rules, Comment R. 1:21-7A (1990). There are 12 elements which should be considered by counsel in drafting a fee agreement; and the fifth element, "Method of computing fee," is stated as follows:
This may be general or specific depending upon the nature of the matter and the agreement between the lawyer and client. If any charges are to be based on time, the hourly rate of the attorneys should be set forth. If charges are to be based on other factors, those factors should be stated. [Ibid.]
There does not appear to be any prohibition against an attorney charging an hourly rate for a service and also making an additional charge for that same service "based on other *539 factors." However, plaintiff's attorney's $200-an-hour rate should reflect item (d) in her fee agreement, her "experience and ability." Her factors (b) and (c), "the amount in controversy" and "the result accomplished," are not factors which alert a client to what to expect by way of an attorney bill for services. To compare the amount in controversy with the result accomplished (i.e., the client received equitable distribution of what percentage of total marital assets) and charge based on a percentage of the equitable distribution to the client clearly has the aspects of a contingent fee.
RPC 1.5(d)(1) states:
(d) A lawyer shall not enter into an arrangement for, charge, or collect:
(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof. ... [Emphasis supplied]
There is no stated prohibition against contingent fees in equitable distribution matters. This court reads the phrase "or property settlement in lieu thereof" to relate back to alimony or support. Thus, while plaintiff's attorney is not prohibited from entering into a contingent fee agreement on the equitable distribution aspect of this controversy, the agreement must satisfy RPC 1.5(c), which states:
A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by law or by these rules. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
The retainer agreement is deficient in that it does not state that the premium billing (i.e., contingent fee) will apply only to the attorney's representation on equitable distribution. It is also deficient in that counsel failed to state the exact formula to be applied to the "amount in controversy" and "the result accomplished" (i.e., the exact percentage) in the fee agreement. *540 The lack of an exact percentage creates a guessing game for the client. The court rule and rules of professional conduct were intended to prevent uncertainty about fees and the surprise bill at the end of litigation, which historically led to many fee disagreements. To permit the "premium" billing as requested herein is, as to that portion of the bill, to return to the uncertainty of the pre-fee agreement days.
Since this court finds the instant retainer agreement on premium billing to be in violation of R. 1:21-7A and RPC 1.5(c) and (d)(1), not only is plaintiff's request that defendant pay a portion of this bill denied, plaintiff's attorney is directed to remove the premium charges from plaintiff's bill.
*541 
*542